IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

COBY TOWNSEND HURST                                                      PLAINTIFF

v.                          Civil No. 5:20-cv-05158

SERGEANT LEVI FRANKS,
Benton County Detention Center;
NURSE NADIA MALAPHA, Turn Key
Health Clinics LLC; SERGEANT GREG
HOBELMANN, Benton County Detention
Center; OFFICER RICHARD PAHMIYER, Rogers
Police Department; OFFICER SIKES, Benton
County Detention Center; and JOHN DOE                                   DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Coby Townsend Hurst ("Hurst") pursuant to 42 U.S.C.

§ 1983.  Hurst proceeds *pro se* and *in forma pauperis* ("IFP").  Pursuant to the provisions of 28

U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation on

a Motion to Dismiss (ECF No. 48) filed by Separate Defendant, Officer Richard Pahmiyer.  The

Court has reviewed the Motion along with Hurst's response (ECF No. 55) and makes the following

recommendation.

## I.   BACKGROUND

According to the allegations of his Amended Complaint (ECF No. 42), on April 17, 2019,

Hurst called and left a message for his mother on her answering machine, indicating he was not

feeling well and needed to go to the hospital in Fayetteville.  (ECF No. 42 at 2).  Hurst

incidentally states the hospitals in Rogers will not treat him.  Hurst alleges that three days later,

he fell and hit his head on a vacant property located across from a Jiffy Gas Station.  (ECF No. 42 at 2).  Hurst says he "stumbled" up to a car in the employee parking lot and told the manager of the gas station, as she was exiting her car, that he had fallen and hit his head.  Hurst says he asked for a ride home, but the manager responded she could not give him a ride because she was late and then ran into the store.  *Id.* at 2 & 7.  Hurst describes sitting on the concrete and crying in pain for approximately ten minutes; he then started walking in the direction of his home, intending to take a short-cut through the woods. Hurst maintains he lacked the strength to walk more than fifteen feet and would fall as a result.   Arriving at the edge of the woods, Hurst says he could not walk into the woods because he feared he would not make it out alive but made his way to a house he knew was occupied.  (ECF No. 42 at 2).  A man, the John Doe Defendant, came outside and told Hurst to leave or he would "call the cops."  *Id.*  Hurst explained he had a head injury and asked the man to call an ambulance.   Hurst says the man agreed but Hurst alleges he called the police instead.  *Id.* at 2 & 7-8.

Officer Pahmiyer, with the Rogers Police Department, arrived on scene. (ECF No. 42 at 2).  Hurst says he was lying on his belly and Officer Pahmiyer directed him to get up; Hurst says he told the officer he was hurt and needed an ambulance.  At this point, Hurst alleges Officer Pahmiyer "grabbed me and pulled on me tearing something in my left side. Then put his knee into me and smashed me then put cuffs on me."  *Id.*  Hurst alleges he was crying out in pain and saying he needed to go to the hospital. Hurst alleges he told Officer Pahmiyer that his blood pressure medication was at home, and he had not taken the medication that day.

Hurst alleges Officer Pahmiyer drove him to his home.  (ECF No. 42 at 2).  Hurst describes that he was in handcuffs and bleeding from a three-inch from his head and from both

2

ears.  *Id.* at 2 & 8.  Hurst alleges his head was swollen from the fall.  When they arrived at Hurst's home, Hurst says his mother was on the porch and was told by Officer Pahmiyer that Hurst was on methamphetamine and had nothing wrong with him.  Hurst says Officer Pahmiyer told Hurst's mother that he was going to jail and asked her for Hurst's blood pressure medication. Hurst describes crying out to his mother to come to the police car and look at his head, but she did not because Officer Pahmiyer said he had no injuries.  Hurst says by this time, he was bleeding from four points on his head.

According to Hurst, Officer Pahmiyer returned to the police car with the blood pressure medication but said: "Coby I got your meds and you can[']t have one I hope you die."  (ECF No. 42 at 3).  Hurst says he demanded help for his head injury and asked to be taken to the hospital but was instead taken to jail.  There, it is alleged, Officer Pahmiyer told the jail that Hurst was on methamphetamine and there was nothing wrong with him.  *Id.*

The remaining allegations of the Amended Complaint address Hurst's description of what occurred while incarcerated and involve claims against other Defendants:  Hurst maintains he was denied medical during his incarceration and none of the detention center Defendants would look at his head and see that it was swollen and had a big bump.  *Id.* at 9.  He says the nurse merely looked in the window at him but would not touch his head, look in his ears at the blood, or conduct a simple eye test. *Id.* at 11.  Instead, the nurse merely looked at him and walked away. Hurst says he was released when another shift arrived, after two days of being "tortured."  Hurst walked to Decision Point and asked the staff to call an ambulance because he had a head injury.  *Id.* at 3. Hurst indicates he was taken to the hospital and was told an MRI was performed.

## II.  APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."    Fed. R. Civ. P. 8(a)(2).    "In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)).    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678.    While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims.    *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III.  DISCUSSION

Officer Pahmiyer contends he is entitled to dismissal of the claims him on the following grounds:    (1) he is entitled to qualified immunity; (2) no plausible claims have been stated against him; and (3) no official capacity claims are stated.    Officer Pahmiyer reads Hurst's Amended Complaint as asserting claims against him for denial of medical care and false arrest.[1]

### A.  Denial of Medical Care Claim

The Eighth Amendment's prohibition against cruel and unusual punishment prohibits deliberate indifference to the serious medical needs of prisoners.    *Luckert v. Dodge Cnty*, 684 F.3d 808, 817 (8th Cir. 2012).    The Eighth Amendment deliberate indifference standard applies to all

---

[1] Officer Pahmiyer fails to address the allegations the Court reads as asserting an excessive force claim.    Specifically, Hurst alleges that Officer Pahmiyer pulled Hurst up tearing something in his left side. (ECF No. 42 at 2). Hurst also alleges Officer Pahmiyer put his knee into Hurst, hurting Hurst, and put him into handcuffs all while ignoring Hurst's cries that he was in pain.    *Id.*

4

denial of medical care claims including those by arrestees and pretrial detainees. *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012)(noting that while an arrestee's denial of medical care is properly analyzed under the Due Process Clause of the Fourteenth Amendment the analysis parallels that under the Eighth Amendment). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

Officer Pahmiyer contends no plausible claim has been stated against as there is no allegation he was aware of or noticed any blood in Hurst's ears; Hurst's mother went to the patrol vehicle and observed Hurst, believing he was uninjured; and Hurst failed to show that he suffered from a serious medical condition for which medical assistance was required. With respect to Officer Pahmiyer's contention that Hurst's mother approached the patrol vehicle and did not observe any injuries, the Court agrees with Hurst that the allegations of the Amended Complaint – which the Court must view as true at this stage – do not support this version of events. To the contrary, Hurst alleges his mother stayed on the porch and did not approach the patrol vehicle after having been told by Officer Pahmiyer that Hurst was on methamphetamine.

Applying the applicable standards, the Court believes a plausible denial of medical care claim has been stated against Officer Pahmiyer. Hurst alleges he was lying on the ground asking for medical assistance when approached by Officer Pahmiyer. Hurst alleges he had fallen; was unable to walk more than fifteen feet at a time; his head was bleeding from a three-inch bump; both ears were bleeding; and his head was swollen. Instead of engaging in an assessment of Hurst

5

or having Hurst medically assessed, Officer Pahmiyer is alleged to have concluded Hurst was high on methamphetamine, ignoring repeated demands for medical assistance and/or assessment of Hurst's injuries.   Mindful that motions to dismiss are filed early in a case, the record now contains no information on what indicia, if any, of methamphetamine intoxication Hurst displayed for Officer Pahmiyer to observe.

Officer Pahmiyer next argues he is entitled to qualified immunity. "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)). Officer Pahmiyer is entitled to dismissal under Rule 12(b)(6) if he shows that he is "entitled to qualified immunity on the face of the complaint."   *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).   Said another way, Officer Pahmiyer is "entitled to qualified immunity unless [Hurst] has plausibly stated both (i) a claim for violation of his [Eighth Amendment right to medical care]; and (ii) that the right was clearly established at the time of the alleged violation." *Vandevender v. Sass*, 970 F.3d 972, 974-75 (8th Cir. 2020).

Having found a plausible claim for denial of medical care has been pled, the Court inquires whether the right was clearly established at the time of the incident in 2019.   "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.   That is not to say that an official action is protected by

6

qualified immunity unless the very action in question has been previously held unlawful.'" *Brown v. City of Golden Valley,* 574 F.3d 491, 499 (8th Cir. 2009)(quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). "The salient question is whether the law in [2019] gave the officer[] fair warning that [his] alleged treatment of [Hurst] was unconstitutional." *Howard v. Kansas City Police Dep't,* 570 F.3d 984, 991 (8th Cir. 2009)(citation omitted).

As a general proposition, a detainee's right to medical treatment is clearly established. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Further, it was clearly established that "delays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim." *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010). At this stage in the proceedings, the Court is required to accept as true the facts alleged in Hurst's Amended Complaint and make all reasonable inferences in Hurst's favor. Based on the allegations, the Court believes a reasonable officer would "comprehend that he was violating [Hurst's] clearly established constitutional rights" by not having Hurst medically assessed. *Barton v. Taber,* 820 F.3d 958, 967 (8th Cir. 2016) (applying the Eighth Amendment to an arrestee's denial of medical care claim and noting the highly deferential standard applied to Rule 12(b)(6) motions to dismiss). Thus, Officer Pahmiyer has failed to establish that, based on the face of Hurst's Amended Complaint, he is entitled to qualified immunity.

### B.    False Arrest Claim

Officer Pahmiyer contends Hurst's false arrest claim must be dismissed because he had probable cause to arrest Hurst. Officer Pahmiyer argues that Hurst has "failed to show that his arrest by Officer Pahmiyer was not justified by probable cause; or, in the alternative, Officer Pahmiyer is entitled to qualified immunity as there existed arguable probable cause for" Hurst's

arrest.   (ECF No. 49 at 3).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." *Kingsley v. Lawrence Cnty, Mo.,* 964 F.3d 690, 697 (8th Cir. 2020)(cleaned up).

> Probable cause to make a warrantless arrest exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.   Arguable probable cause exists when an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable.

*Id.* at 697-98 (cleaned up).

Officer Pahmiyer points out he made statements suggesting Hurst was under the influence of methamphetamine, contending he had probable cause to arrest Hurst for public intoxication in violation of Ark. Code Ann. § 5-71-212(a).   A person commits this offense if "he or she appears in a public place manifestly under the influence of alcohol or a controlled substance to the degree and under the circumstances such that:   (1) The person is likely to endanger himself or herself or another person or property; or (2) the person unreasonably annoys a person in his or her vicinity."   Ark. Code. Ann. § 5-71-212(a).

An officer's mere statement that he believes a crime has been committed does not make it so.   At the time of Hurst's arrest, Officer Pahmiyer knew only that Hurst was laying down on the ground, requesting medical assistance, and claiming to have suffered injuries.   Nothing in the Amended Complaint suggests Officer Pahmiyer asked Hurst about his drug use, evaluated his sobriety, or assessed Hurst to determine if, in fact, he was injured.   The Court cannot conclude, at this stage, that Officer Pahmiyer had probable cause to arrest Hurst for being under the influence of a controlled substance.   Officer

Pahmiyer is not entitled to dismissal of this claim.

### C.    Official Capacity Claim

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."    *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, the official capacity claims against Officer Pahmiyer are treated as claims against the City of Rogers.    *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee."    *Bolderson v. City of Wentzville,* 840 F.3d 982, 985 (8th Cir. 2016)(citation omitted).    In this regard, Hurst alleges only that there is a "wide spread calling people on meth all the time and not caring to listen to a[n] individual."    He makes no additional allegations.    Liability for an unofficial custom requires the existence of a "continuing, widespread, and persistent pattern of unconstitutional misconduct."    *Id*. at 986.    Hurst has not asserted facts sufficient to state a plausible claim that there was any widespread, persistent pattern of unconstitutional conduct.    Hurst's single conclusory allegation is insufficient to state a plausible official capacity claim. Claims against Officer Pahmiyer in his official capacity should be dismissed.

### IV.    CONCLUSION

For these reasons, it is recommended that the Motion to Dismiss (ECF No 48) be **GRANTED in part and DENIED in part.**    Specifically, it is recommended that the official capacity claim against Officer Pahmiyer be dismissed.    In all other respects, it is recommended that the Motion to Dismiss be denied.

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 5th day of August 2021.

/s/ *Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE